IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LORI LANGEN, ) <br> ) <br> Defendant. ) | Case No. 3:12-30041 |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court is Defendant Lori Langen's Amended Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2) and the United States Sentencing Guidelines (USSG) Amendment 782 (eff. Nov. 1, 2014). d/e 39. Because Defendant's sentence was not "based on" an amended Guidelines range, Defendant's motion is DENIED.

### I.    BACKGROUND

In June 2011, Defendant provided Crystal Krouse with methadone. Plea Agreement ¶ 28, d/e 12.[1] Ms. Krouse was later found dead in her bed as a result of methadone intoxication. Id. In

---

[1] The Plea Agreement and the Sentencing Transcript are both sealed documents. The Court notes that the Government did not request to cite to or quote from these sealed documents in its brief. Nor did the Government request to file its brief under seal.

August 2011, Defendant sold methadone to two confidential sources, both of whom were working with investigators with the Central Illinois Enforcement Group. Id. During the exchange, Defendant stated that she gave Ms. Krouse methadone. Id. Defendant was arrested on federal charges of distribution of a controlled substance on March 7, 2012. Crim. Compl. 1; Text Order, Mar. 7, 2012.

When a defendant and the Government agree to a specific sentence that they feel is appropriate given the particular facts of the case, they may enter into a written plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) ("11(c)(1)(C) agreement"). Hughes v. United States, 138 S. Ct. 1765, 1769 (2018). The Government and Defendant entered into such an agreement on June 20, 2012. See Plea Agreement. In the agreement, Defendant pled guilty to three counts of unlawful distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Plea Agreement ¶¶ 3–4. While Defendant was not charged with Ms. Krouse's death, Defendant did concede in her 11(c)(1)(C) agreement "that the death of Crystal Krouse [was] a relevant factor" in determining the length of

Defendant's sentence. Id. at ¶ 20. The 11(c)(1)(C) agreement stated that Defendant and the Government agreed to a term of imprisonment of 120 months. Plea Agreement ¶ 6, d/e 12.

At sentencing on December 3, 2012, Defendant's potential Guidelines range was calculated to be 12–18 months. Sent'g Tr. 13:13–16, Dec. 3, 2012, d/e 36. Rather than imposing a sentence within that range, the Court accepted the 120-month sentence from the 11(c)(1)(C) agreement and Defendant was so sentenced. Id.

The United States Sentencing Commission (USSC) is required to periodically review and revise the Sentencing Guidelines. 28 U.S.C. § 994(o). If a defendant's original sentence was based on a Guidelines range that was lowered by the USSC, the defendant's sentence may be reduced accordingly. 18 U.S.C. § 3582(c)(2). The USSC adopted USSG Amendment 782 in November 2014, which reduced the sentencing base levels for most drug offenses by two levels. USSG App. C, Amend. 782 (Supp. Nov. 2012–Nov. 2016). The Amendment was later made retroactive to allow defendants sentenced under the higher levels to seek sentence reductions. Amend. 788; Hughes, 138 S. Ct. at 1774. The base levels for the

offenses for which Defendant was convicted were included in Amendment 782.

Defendant, therefore, filed her first pro se motion to reduce sentence on August 1, 2014, under 18 U.S.C. § 3582(c)(2) and Amendment 782. Def.'s Mot. to Reduce Sentence, Aug. 1, 2014, d/e 26. Before receiving a ruling on the 2014 motion to reduce sentence, Defendant filed a motion for appointment of counsel on February 24, 2015, which was docketed as a second motion to reduce sentence. Mot. for Appointment of Counsel, Feb. 24, 2015, d/e 28. Those motions were denied on August 5, 2015. Text Order, Aug. 5, 2015.

In July 2018, Defendant filed another pro se Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2). d/e 34. The Court appointed the Office of the Federal Public Defender to represent Defendant. Text Order, July 17, 2018. Appointed counsel subsequently filed the amended motion that is now before the Court. In her current motion to reduce sentence, Defendant asserts a new review of her motion is appropriate given the Supreme Court's decision in Hughes v. United States, in which the

Supreme Court overruled the case law on which the Court's denial of Defendant's first motion was based. Def.'s Am. Mot. 4.

## II. ANALYSIS

A defendant who enters an 11(c)(1)(C) plea agreement may also have his sentence reduced if his original sentence was based on a Guidelines range subsequently lowered by the USSC. Hughes, 138 S. Ct. at 1776. Usually, defendants may only make one motion to reduce sentence per USSC Guidelines Amendment. United States v. Beard, 745 F.3d 288, 292 (7th Cir. 2017). However, Defendant's previous motion was reviewed using case law that has since been overruled. A new analysis of Defendant's motion is, therefore, appropriate. However, under the current case law Defendant's sentence is still not based on a retroactively amended Guidelines range. Consequently, Defendant is not eligible for a reduced sentence.

### A. A new analysis of Defendant's § 3582(c)(2) motion to reduce sentence is appropriate.

Generally, a defendant may make one motion per retroactive amendment. United States v. Beard, 745 F.3d 288, 292 (7th Cir. 2017). If a defendant is unsatisfied with a court's decision on the

motion to reduce sentence, the defendant's only recourse is a direct appeal. United States v. Goodwyn, 596 F.3d 233, 236 (4th Cir. 2010). Defendants may not, however, file additional motions. Id. Simply put, defendants usually only have one bite at the apple per retroactive Amendment. Beard, 745 F.3d at 292.

However, when the Court first denied Defendant's § 3582(c)(2) motion, the Court relied on Freeman v. United States, 564 U.S. 522 (2011). Text Order, Aug. 5, 2015. In Freeman, the Supreme Court addressed whether 11(c)(1)(C) agreements were "based on" the Sentencing Guidelines for purposes of motions for sentence reductions under § 3582(c)(2). 564 U.S. at 525–26. But no opinion in Freeman commanded a majority: a plurality opinion authored by Justice Kennedy was joined by three Justices, a dissent authored by Chief Justice Roberts was also joined by three Justices, and Justice Sotomayor authored a separate concurrence. Hughes, 138 S. Ct. at 1771.

Justices Kennedy and Sotomayor used different methods for determining when a defendant's 11(c)(1)(C) agreement was "based on" an amended Sentencing Guidelines range. See Freeman, 564 U.S. 529–30 (plurality opinion); id. at 538–39 (Sotomayor, J.,

concurring). In the plurality opinion, Justice Kennedy asserted that a sentence is "based on" a Guidelines range in every case where it is used as a "beginning point" to explain the decision to either adhere to the range or deviate from it. Freeman, 564 U.S. at 529 (plurality opinion). In contrast, Justice Sotomayor's concurrence asserted that sentences from 11(c)(1)(C) agreements should only be considered "based on" a sentencing range if the agreement explicitly references that range. Id. at 538–39 (Sotomayor, J., concurring).

Because no opinion commanded a majority, the Circuit Courts of Appeal were split as to which method to follow as controlling. Hughes, 138 S. Ct. at 1771. When the Supreme Court decides a case and no single rationale explaining the results commands a majority, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." Id. (citing Marks v. United States, 430 U.S. 188, 193 (1977) (further quotations and internal citations omitted)).

The First, Third, Fourth, Sixth, Seventh, Eighth, and Tenth Circuits held that the "narrowest" opinion and method used in Freeman was Justice Sotomayor's concurrence. Id. However, the

Courts of Appeals for the District of Columbia and the Ninth Circuit held that neither Justice Kennedy's plurality nor Justice Sotomayor's concurrence controlled because the reasoning in the concurrence was not a "logical subset" of the plurality. Id. (citing United States v. Davis, 825 F.3d 1014, 1021–1022 (9th Cir. 2016) (en banc) and United States v. Epps, 707 F.3d 337, 350 (D.C. Cir. 2013)). But those Courts still adopted the method used in Justice Kennedy's plurality as the most persuasive interpretation of § 3582(c)(2).

To correct the Circuit split and provide clarity, the Supreme Court readdressed the "based on" issue in Hughes. Id. at 1771–72. In Hughes, the Supreme Court held that 11(c)(1)(C) agreements are no exception to the general rule that a defendant's Guidelines range is both the starting point and the basis for the defendant's ultimate sentence. Id. at 1776. However, "[i]f the Guidelines range was not 'a relevant part of the analytic framework the judge used to determine the sentence or to approve the [11(c)(1)(C)] agreement,' . . . [a sentence reduction] under § 3582(c)(2) is unavailable." Id. (quoting Freeman 564 U.S. at 530). This relief is only available "absent clear demonstration, based on the record as a whole, that

the court would have imposed the same sentence regardless of the Guidelines." Id. (citing Koons v. United States, 138 S. Ct. 1783, 1788–90 (2018)).

Given the change in the law from Freeman to Hughes, a new analysis of Defendant's motion to reduce sentence under § 3582(c)(2) is, therefore, appropriate.

**B.   Defendant's sentence was not 'based on' a retroactively amended Guidelines range.**

A court's calculation of a defendant's Guidelines range at sentencing does not necessarily mean that the accepted and imposed sentence is "based on" that calculated range. Koons, 138 S. Ct. at 1786. Defendants must also show that the calculation of a Guidelines range was more relevant to the sentence imposed than any other statutory minimum. Id.

For example, the sentences the five defendants in Koons v. United States received were not "based on" retroactively amended ranges. Id. at 1787. In that case, each defendant had a potentially applicable mandatory minimum sentence greater than his calculated Guidelines range. Id. Before imposing the defendants' sentences, the district court first calculated the defendants'

advisory Guidelines ranges. Id. But the court then discarded those ranges in favor of the applicable mandatory minimums. Id. After that, the Government moved for a downward departure from the minimums. Id. This departure reflected the defendants' substantial assistance to the Government, as was stated in their 11(c)(1)(C) agreements. Id. The Supreme Court, therefore, held that the defendants' sentences were not based on the applicable Guidelines ranges. Id. at 1788. Instead, the defendants' sentences were based on their mandatory minimums and their substantial assistance to the Government. Id. As a result, the defendants' motions for sentence reduction under § 3582(c)(2) were denied. Id.

Similarly, here, Defendant's sentence was not "based on" a Guidelines range retroactively amended by Amendment 782 and, therefore, a sentence reduction under § 3582(c)(2) is unavailable. Defendant's 11(c)(1)(C) agreement stated that the Government and Defendant took into account Defendant's concession "that the death of Crystal Krouse [was] a relevant factor[.]" Plea Agreement ¶ 20; Def.'s Am. Mot. 2. The 11(c)(1)(C) agreement also stated that "[a]rguably a sentencing enhancement under 21 U.S.C. § 841(a) and U.S.S.G. § 2D1.1(a)(2) applies." Plea Agreement ¶ 20. Such an

enhancement would have raised Defendant's base offense level from 16 to 38 and subjected Defendant to a statutory minimum term of imprisonment of 240 months. U.S.S.G. § 2D1.1(a)(2) (a defendant's base offense level is raised to 38 "if the defendant is convicted under 21 U.S.C. § 841(b)(1)(C) . . . and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance"); 21 U.S.C. § 841(b)(1)(C); Government's Opp'n to Def.'s Mot. 15, d/e 40. The Government only conceded that the enhancement should not apply "for purposes of [the] plea." Plea Agreement ¶ 20.

Instead, the parties agreed to a 120-month sentence, a significant departure from the potential 240-month sentence the parties agreed Defendant could have received with the enhancement. Id. at ¶ 19; 21 U.S.C. § 841(a)(1)(C). This change reflected Defendant's cooperation with the Government and her plea. Plea Agreement ¶ 19. At the same time, the 120-month sentence imposed was also much higher than the 12- to 18-month Guidelines range calculated at sentencing. Sent'g Tr. 5:22–6:2.

However, the Court's calculation of Defendant's potential Guidelines range at sentencing does not itself mean that the

imposed sentence was "based on" the amended range as defined by Hughes. Koons, 138 S. Ct. at 1786. Even though the Court calculated the Guidelines range, the 11(c)(1)(C) agreement the parties entered into did not reference any potential range. See Plea Agreement ¶ 21. Additionally, the Court considered the death of Ms. Krouse, not Defendant's Guidelines range, in light of several of the sentencing factors considered when determining an appropriate sentence: the nature and circumstances of the offense, the need for the imposed sentence to reflect the seriousness of the offense, and to provide just punishment. 18 U.S.C. §§ 3553(a), (a)(1), (a)(2)(A). Indeed, the Court noted at the sentencing hearing that the 120-month sentence was accepted "because of the nature and circumstances of the offense, the history of the defendant, and in particular, the death." Sent'g Tr. 13:13–16.

Therefore, the death and the potential sentencing enhancement were more relevant to the Court's accepting Defendant's sentence than the calculated Guidelines range. Hughes, 138 S. Ct. at 1776. Based on the record as a whole, this Court clearly "would have imposed the same sentence regardless of the Guidelines." Id. Moreover, the fact that the sentence imposed

by the Court varied greatly from both the calculated Guidelines range and the potentially enhanced minimum sentence shows that the sentence was not "based on" the calculated Guidelines range. This variance shows that the potential sentence enhancement played a more "relevant part" at sentencing than the Guidelines range. See Koons, 138 S. Ct. at 1788 (quoting Hughes, 138 S. Ct. at 1776 ("For a sentence to be "based on" a lowered Guidelines range, the range must have at least played 'a relevant part [in] the framework the [sentencing] judge used' in imposing the sentence.")).

## III. CONCLUSION

Because Defendant's sentence was not "based on" a retroactively amended Guidelines range, Defendant's Amended Motion to Reduce Sentence (d/e 39) is DENIED. Defendant's pro se Motion for Reduction of Sentence (d/e 34), amended by the motion filed through counsel, is DENIED for the same reason.

**ENTERED: September 5, 2019.**

**FOR THE COURT:**
                              **/s/Sue E. Myerscough**
                              **SUE E. MYERSCOUGH**
                              **UNITED STATES DISTRICT JUDGE**